UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H. BURKE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COURTNEY MCGINTY SOTO, as an individual and in her official capacity; STEPHEN WEHR, as an individual and in his official capacity; TONY DeVILLE, as an individual and in his official capacity; EL DORADO UNION HIGH SCHOOL DISTRICT, a public entity; and DOES 1 through 50, inclusive;[1]<br><br>Defendants,<br><br>AND RELATED CROSS-CLAIMS. | No. 2:16-cv-01311-KJM-AC<br><br>ORDER |

Plaintiff, the former principal of El Dorado Union High School, sues the school district and several colleagues, alleging he was wrongfully terminated based on a flurry of false rumors. He contends he was retaliated and discriminated against, defamed, and intentionally

---

[1] If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

1

distressed. Three defense motions are now before the court. Defendant Courtney McGinty Soto moves to strike and dismiss only the defamation claim. ECF No. 16; ECF No. 17. Defendants Stephen Wehr, Tony DeVille and the El Dorado Union High School District jointly move to dismiss all but one claim against them. ECF No. 18. Plaintiff opposes all three motions. After holding a hearing on all motions, ECF No. 34, and for reasons explained below, the court DISMISSES plaintiff's federal claims for failure to state a claim and DECLINES to exercise supplemental jurisdiction over the remaining state law claims.

I. BACKGROUND

From 2013 to 2016, plaintiff Paul Burke was the Principal of Oak Ridge High School, a public school in the El Dorado Union High School District ("District"). Second Am. Compl. ("SAC"), ECF No. 15, ¶¶ 1, 5. Before the events spawning this lawsuit occurred, plaintiff had a successful track record: Under his leadership, student expulsions decreased, student test scores increased and the District gave him outstanding year-end performance evaluations. *See id.* ¶¶ 10-11. Plaintiff's reputation began to wane in late 2015 when his assistant, defendant Soto, fabricated rumors that plaintiff sexually harassed a female staff member on campus. *See id.* ¶ 13. The alleged victim vehemently denied the allegations, explaining she was not on campus during the month the alleged harassment happened. *See id.* ¶¶ 2, 13-14. The alleged victim then told plaintiff "she had just been recruited to make a false sexual harassment claim," but that she refused to do so. *Id.* ¶ 17.

Knowing the allegations were false, plaintiff nonetheless called defendants Superintendent Stephen Wehr and Assistant Superintendent of Human Resources Tony DeVille to make a report, as required under the District's reporting policies. *Id*. Within days, DeVille met with the alleged victim twice, and both times she "vehemently denied being sexually assaulted in any way." *Id.* ¶¶ 20, 27. DeVille relayed this information to Soto. *Id.* ¶ 21. Soto then manufactured more allegations, including that plaintiff had asked Soto to "change a student's grade so no one could trace it." *Id.* ¶ 22.

On November 2, 2015, Wehr placed plaintiff on paid administrative leave pending an investigation of the allegations against him. *Id.* ¶ 24. While plaintiff was on leave, the District

2

compiled a report outlining his purported workplace transgressions; he received a copy in January 2016. *Id.* ¶ 44. In the report, the purported sexual harassment appeared more as an unsubstantiated "aside," *id.* ¶ 27, the focus turning instead to accusations that plaintiff impermissibly changed students' grades, *id.* ¶¶ 49-51, and used profanity on campus and got angry at meetings, *id.* ¶ 45. Staff members claimed they knew plaintiff was angry, in part, because his hands shook. *Id.* ¶ 45. Plaintiff's shaking hands actually were caused by a benign tumor syndrome, a neurological condition he had for years that never affected his job performance. *Id.* ¶¶ 46-47. Plaintiff first told the District about this condition in a letter dated February 7, 2016. *Id.* ¶ 81. Three weeks later, on February 29, 2016, the District effectively terminated plaintiff's employment by not renewing his contract. *Id.* ¶¶ 64, 75.

Plaintiff filed his original complaint with this court on June 13, 2016, ECF No. 1, and a first amended complaint eleven days later, ECF No. 9. On September 19, 2016, plaintiff filed the operative Second Amended Complaint. The operative complaint makes six claims: Retaliation against the District under Title VII of the Civil Rights Act (claim one) and under Title IX of the Education Amendments of 1979[2] (claim two); violation of the Americans with Disabilities Act (ADA) against the District, Wehr and DeVille (claim three); defamation against Soto (claim 4); violation of the Ralph M. Brown Act[3] against the District (claim five); and intentional infliction of emotional distress against Wehr and DeVille (claim six). *See generally* SAC. The court's resolution of the motions to dismiss plaintiff's federal claims is dispositive and so the court addresses only the joint dismissal motion of the District, Wehr and DeVille to the extent that motion addresses the federal claims. *See* Defs.' Mot., ECF No. 18; Defs.' Mem., ECF No. 18-1. Plaintiff opposes this motion. Opp'n, ECF No. 24.

---

[2] Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

[3] "The Ralph M. Brown Act [California Government Code § 54950 *et seq.*], is designed to encourage public participation in government," and does so by providing for openness with respect to meeting agendas and materials and providing that the public must be allowed to address a local legislative body. *Coalition of Labor & Agriculture v. Cty. of Santa Barbara Bd. of Supervisors*, 129 Cal. App. 4th 205, 207 (2005); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 807 (9th Cir. 2013).

## II. LEGAL STANDARD: MOTION TO DISMISS

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pled factual allegations as true and construe the complaint in plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

## III. FEDERAL CLAIMS

Plaintiff's federal claims provide the basis for this court's subject-matter jurisdiction. *See* 28 U.S.C. § 1331.

### A. Retaliation (Title VII and Title IX)

Plaintiff asserts the District, a federally funded entity, violated Title VII and Title IX when it placed him on administrative leave, negatively reviewed his job performance and then declined to renew his contract in retaliation for his protected activity of reporting sexual harassment. *See* SAC ¶¶ 67-77.

Courts analyze retaliation claims under Title IX using the same tests, standards and precedents as applicable to Title VII, so the court here relies on the more prolific case law interpreting the latter. *Emeldi v. Univ. of Or.*, 698 F.3d 715, 725 (9th Cir. 2012) ("[W]e hold that the Title VII framework generally governs Title IX retaliation claims."). A viable retaliation claim requires plaintiff to show he engaged in protected activity, the employer subjected him to an adverse employment decision and there is a causal link between the two. *Id.* at 724. Although the District focuses primarily on the latter two elements, Defs.' Mem. at 8, the court finds plaintiff has not satisfied the first: He has pled no "protected activity."

### 1. Legal Standard: Protected Activity

Plaintiff's purportedly protected activity occurred when he self-reported a knowingly false allegation that he had sexually harassed a female colleague. Title VII makes it illegal for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]" 42 U.S.C. § 2000e-3(a). The first clause of this statute, relevant here, is the "opposition clause"; the second is the "participation clause." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).

Generally, good-faith reporting of unlawful sexual harassment is a protected activity under the opposition clause. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 969 (9th Cir. 2009). But to be deemed "protected activity," the employee must subjectively and reasonably believe the facts he is reporting are true. *See id.* at 967 ("[T]o constitute protected activity, a complaint must be based on an employee's 'reasonable belief' that he is reporting conduct that violates Title VII."); *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994); *see also Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901-02 (4th Cir. 2017) (emphasizing knowingly false report cannot be protected activity). Courts uniformly enforce this merged subjective and objective standard. *See, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-16 (2d Cir. 2013) ("An employee's complaint may qualify as protected activity . . . 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions . . . violated . . . Title VII.") (citation omitted); *Richey v. City of Independence*, 540 F.3d 779, 785 (8th Cir. 2008) (same); *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752-53 (7th Cir. 2002) (same); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (same); *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997) (same); *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1268 (5th Cir. 1992) (same); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) (noting limitations to reasonable belief standard; emphasizing that even if reported facts are ultimately inaccurate, report is still protected activity where reporter reasonably believed facts were true).

2. <u>Discussion</u>

Here, plaintiff self-reported a false allegation that he sexually harassed a colleague. He did not subjectively or reasonably believe he was reporting a Title IX or Title VII violation. In fact, the theme driving his complaint is that the sexual harassment allegation was objectively preposterous from its inception. As the alleged perpetrator, he pleads it never happened and so conclusively shows no subjective belief that the allegation was true.

The opposition clause does not protect reporting false allegations that the reporter knows are false. Indeed, an employee who complains about conduct he knows did not actually occur is not "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *see Gilooly v. Mo. Dep't of Health and Senior Servs.*, 421 F.3d 734, 741-45 (8th Cir. 2005) (Colloton, J., concurring in part and dissenting in part) (noting irony; explaining "[i]n terms of the text of the statute, an employee who makes false allegations has not 'opposed any practice made an unlawful employment practice,' because only good faith, reasonable opposition is protected by the statute.") (citations omitted). Thus, firing an employee for reporting a knowingly fabricated allegation relating to a Title VII violation does not run afoul of the opposition clause. *Total Sys. Servs., Inc.*, 221 F.3d at 1176; *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 515 (7th Cir. 1996) (rejecting retaliation claim where complainant was demoted after reporting office rumors about sexual assault; finding reporting rumors not "protected activity" because complainant had no "reasonable belief" rumors amounted to a Title VII violation). Because plaintiff here reported a fabricated allegation, his report is not protected activity. *Sias*, 588 F.2d at 695 (emphasizing there must be reasonable belief that reported facts are true at time of report).

Policy rationales fortify this conclusion. To deem self-reporting of knowingly false allegations as protected activity could create a perverse incentive: Employees could self-report office rumors to inoculate themselves against adverse employment decisions. *Cf. Lewis v. Bay Indus., Inc.*, 51 F. Supp. 3d 846, 857 (E.D. Wis. 2014) ("An employee cannot simply shout sexual harassment to his supervisors and thereby insulate himself from adverse job actions by his employer."). Furthermore, the statutory purpose is to encourage good-faith reporting and prevent

harm to victims and witnesses. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) (noting statutory goal to make victims whole). *See also Crawford*, 555 U.S. at 279 (statute's "primary objective" is to avoid harm to employees victimized by workplace discrimination and harassment). Plaintiff here is neither a victim of sexual harassment nor a witness to harassment. As the subject of the false rumor, plaintiff is the alleged perpetrator of the wrongful conduct. He does not fall within the zone of protection contemplated by Title VII or Title IX.

Plaintiff's first and second claims cannot survive dismissal.

### B. Americans with Disabilities Act Claims

Defendants next move to dismiss plaintiff's ADA claim. Plaintiff alleges "[his] shaking hands were a motivating reason for the District to conduct the adverse employment action of placing [him] on administrative leave" and that "after learning that he had a neurological condition that caused his hands to shake" the District "kept him on leave and ultimately terminated his employment." SAC ¶ 81. Plaintiff concedes he has no ADA claim against defendants Wehr and DeVille, as they are not "employers." Opp'n at 3. The court therefore DISMISSES plaintiff's ADA claim against them.

Plaintiff asserts two ADA theories against the District: (1) The District placed him on leave because of his shaking hands; and (2) the District did not engage in the interactive process after discovering his disability. Plaintiff has not pled enough to support either theory.

#### 1. First Theory: Disability Discrimination

The District argues it cannot be held liable for disability discrimination because plaintiff was placed on leave before the District knew about his disability. Defs.' Mem. at 10. For this theory to withstand dismissal, plaintiff must plead he (1) has a disability within the meaning of the ADA, (2) is capable of performing the essential functions of his job with or without reasonable accommodation, and (3) was discriminated against because of his disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (citation omitted).

Here, plaintiff meets the first two elements. He has pled that he suffers from a benign tremor syndrome, which causes his hands to shake, and that he can still perform the job's essential functions. SAC ¶¶ 79-80. He falls short on the third element: He has not shown his

7

shaking hands motivated the District's decision to place him on administrative leave. Plaintiff first told the District about his disability approximately three months after he was already on leave. *Id.* ¶¶ 24, 45 (placed on leave Nov. 2, 2015; letter informing District of disability dated Feb. 7, 2016). His own allegations undermine his claim: The District could not have discriminated against plaintiff for a disability of which it first became aware after having placed plaintiff on administrative leave.

The court is unpersuaded by plaintiff's argument that the disability is apparent and therefore the District should have known he was disabled before placing him on leave. Opp'n at 4. The District attributed his shaking hands to anger, not to a disability. The context in which the shaking happened was not inconsistent with this conclusion. *See id.* ¶ 45 ("District's report . . . [explained plaintiff] got angry in meetings and that staff could tell he was angry because, in part, that his hands would shake."). Plaintiff's allegations are not enough to show the District knew plaintiff was disabled before it placed him on leave.

Plaintiff also argues that, even if the District did not know about plaintiff's disability before placing him on leave, the District knew about the disability when it "kept" him on leave and when it decided not to renew his contract. Opp'n at 4. Plaintiff appears to be arguing that once he revealed his disability to the District, the District should have immediately restored him to his job. *See* SAC ¶ 81 (alleging that after discovering plaintiff "had a neurological condition that caused his hands to shake, the District kept him on leave and ultimately terminated his employment . . ."). The District kept plaintiff on leave while the investigation of a range of actions was already underway and continuing. SAC ¶¶ 23-28, 45. That the District did not change course after discovering the reason plaintiff's hands shake does not reveal a plausibly discriminatory animus. Plaintiff makes no allegation that plausibly ties plaintiff's contract nonrenewal to his known disability. Rather, plaintiff's allegations show his contract was not renewed based on a number of unrelated accusations, including the sexual harassment allegation discussed above, an improper change to a student's grade and reports that plaintiff used profanity and got angry in the classroom. *Id.* ¶¶ 45, 70-71, 75-76. The lone

citation to plaintiff's shaking hands is embedded within the District's report as a mere illustration of a larger problem, plaintiff's uncontrolled anger. *Id.* ¶ 45.

In sum, plaintiff's allegations are inconsistent and insufficient to withstand dismissal. He contends he was terminated because he reported sexual harassment, then later contends he was terminated based on his shaking hands. SAC ¶¶ 70-71, 75-76, 81. Although plaintiff may pursue alternate legal theories, "the liberal pleading policy has its limits. '[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'" *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (citation omitted); *see also* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1285 (3d ed. 2004) ("A party should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses or is otherwise justified in pleading in this fashion . . ."). Plaintiff's discrimination claim cannot rest on the unsupported and contradicted conclusion that his disability drove the District's decisions. The court DISMISSES plaintiff's third claim as to this theory.

2. <u>Second Theory: Interactive Process</u>

Plaintiff also alleges the District discriminated against him by failing to engage in the interactive process required by the ADA after it learned about his disability. SAC ¶¶ 81-82. To withstand dismissal here, plaintiff must plead either that he requested an accommodation or his employer recognized his need for an accommodation, but his disability precluded him from requesting it. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Plaintiff has pled neither. He does not say he requested accommodations; he does not say or allege facts showing the nature of his disability precluded him from making such a request; and he does not allege the District knew he needed accommodations. He merely contends the District should have known he had a disability because his hands visibly shook. SAC ¶¶ 81-82. As explained above, no allegation signals the District knew plaintiff's shaking was plausibly connected to a disability before placing him on leave. Even if the District had

known, no allegations show any need for accommodations, or that the District should have known such accommodations were needed. *See id.* ¶¶ 78-83. Because the District discovered plaintiff had a disability only after plaintiff was already on leave, plaintiff has not and cannot identify a time when he was denied an accommodation while at work. Plaintiff not only pled insufficient facts to support his claim, but has in fact pled facts that undermine his claim. His second theory cannot survive dismissal. The court DISMISSES plaintiff's third claim in full.

IV. <u>LEAVE TO AMEND FEDERAL CLAIMS</u>

This is plaintiff's third pleading. *See* ECF No. 1 (initial complaint); ECF No. 9 (first amended complaint); ECF No. 13 (ordering granting leave to file second amended complaint). He has neither sought leave to amend his federal claims, nor explained how he could do so. Nonetheless, because this is the court's first dismissal order, and because the federal rules provide for a lenient amendment policy, the court grants plaintiff limited leave to attempt to remedy the serious flaws highlighted above. *See* Fed. R. Civ. P. 15(a) (mandating leave to amend "be freely given when justice so requires."); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (applying policy with "extreme liberality") (citation and quotation marks omitted).

V. <u>STATE CLAIMS</u>

Jurisdiction here is predicated solely on plaintiff's federal claims. The court has now dismissed all federal claims, albeit with leave to amend. Given the relatively early phase of litigation, the court anticipates not exercising supplemental jurisdiction over plaintiff's state claims unless they are accompanied by at least one viable federal claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When the balance of [] factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *see also* 28 U.S.C. § 1367 (supplemental jurisdiction statute). Accordingly, the court will defer ruling on the pending motions as to plaintiff's fourth, fifth and sixth state law claims until plaintiff has exhausted his opportunity to amend the federal claims.

## VI. CONCLUSION

The court GRANTS defendants' motion to dismiss plaintiff's first, second and third federal claims. Although plaintiff previously has amended his complaint, the court GRANTS plaintiff one more opportunity to amend to address the shortcomings in his pleadings as to the federal claims that this order identifies. Because plaintiff appears to face serious hurdles to amendment so as to save the federal claims, any further amended complaint must be accompanied by a joint statement limited to five pages, prepared in conjunction with and following meeting and conferring with defense counsel, addressing whether and how the amendment remedies these shortcomings. If plaintiff decides not to amend the complaint as allowed here, the joint statement should address whether the court should retain supplemental jurisdiction of the state law claims, despite its disinclination as explained above. Any amended complaint accompanied by the required joint statement shall be filed within fourteen (14) days.

This order partially resolves ECF No. 18, as to the federal claims. The court reserves ruling on the other pending motions pending the outcome of the amendments and supplemental briefing.

IT IS SO ORDERED.

DATED: October 23, 2017.

UNITED STATES DISTRICT JUDGE